UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:23-CV-00322-KDB-SCR

| | |
|---|---|
| TYRICKA LASHANDA SIMPSON,<br><br>**Plaintiff,**<br><br>v.<br><br>ADAM MCCOY'S HAULING AND GRADING, INC., ADAM MCCOY AND AMANDA MCCOY,<br><br>**Defendants.** | |

## MEMORANDUM AND RECOMMENDATION AND ORDER

**THIS MATTER** is before the Court on a Motion to Dismiss submitted by Defendants Adam McCoy's Hauling and Grading, Inc., ("AMHGI"), Adam McCoy, and Amanda McCoy (Doc. No. 7), and the parties' briefs and exhibits. (Doc. Nos. 8, 9 & 11).

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is ripe for disposition.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends Defendants' Motion be <u>granted in part and denied in part</u> as discussed below.

    **I.**    <u>**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**</u>

Plaintiff brought this action against her former employer and the company's individual owners for sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964. ("Compl." Doc. No. 1-1). Plaintiff was first hired by AMHGI in August 2021 as an over-the-road truck driver. (Compl. ¶ A). In November 2021, Plaintiff resigned her employment with

1

AMHGI, but shortly thereafter, asked to return to AMHGI and was re-hired in late December 2021. (Id.). In early February 2022, Plaintiff arrived at an assigned warehouse in Houston, Texas. (Compl. ¶ B). Shortly after her arrival, she observed a male coworker outside of his truck wearing only his underwear near her assigned trailer. (Compl. ¶ B(ii)). While Plaintiff encountered the half-naked coworker, she spoke to another male colleague on FaceTime and shared the "very odd and uncomfortable sight" with him. (Id.). The coworker returned to his truck and later leaned out of his window shirtless and stated "I'm sorry, I didn't mean to walk in front of you in my underwear." (Compl. ¶ B(iii)). Subsequently, Plaintiff "left to find a comfortable place to rest for the night," even though "she would normally do her 10hr reset at the warehouse[, because] she felt unsafe and uncomfortable." (Id.).

Plaintiff, preparing to go on a birthday vacation the next week, did not immediately report the incident to AMHGI. (Compl. ¶ B(ii)). Instead, the male colleague who was on the phone with Plaintiff agreed to "report the incident to the owner Adam McCoy and state[] what he witnessed." (Id.). More specifically, Plaintiff claims she agreed with her male colleague that he would make the initial report and that she would "follow-up" once she returned from her vacation. (Id.). On February 21, 2022, Plaintiff returned to work. (Compl. ¶ B(iii)). Plaintiff alleges "she followed-up regarding the incident that took place at the warehouse that she frequently delivered to" with AMHGI's safety manager, Jonathan Jenkins. (Compl. ¶ B(iv)). Jenkins informed Plaintiff that he had spoken with the coworker that Plaintiff had witnessed in his underwear, and that the coworker stated that he "didn't mean to walk in front of her half naked." (Id.). Plaintiff indicates she "never received a disciplinary memo or any type of documentation for her concern or safety." (Id.).

After this incident, Plaintiff alleges that "the rules began to change." (Compl. ¶ B). First, on March 9, 2022, Plaintiff received a warning from Jenkins, indicating that she could not place

2

her driving log in a "Yard Move" status while advancing a load as such a violation could result in federal citations to AMHGI. (Compl. ¶ C(i), (iii)). Then, on March 16, 2022, Plaintiff was again warned by Jenkins, on the grounds that she was misusing the log status of "Personal Conveyance" while under a load. (Compl. ¶ D). Plaintiff alleges that she was not, in fact, advancing a load at that time. (Id.). Finally, on March 18, 2022, after warnings as to the improper logging of her time, AMHGI terminated Plaintiff's employment. (Compl. ¶ E). AMHGI claims that Plaintiff was terminated because of Plaintiff's repeated logging violations and her loss of two diesel caps on her vehicle. (Id.). Plaintiff alleges that Defendants manipulated certain of Plaintiff's travel logs to falsely accuse Plaintiff of noncompliance with company policy and federal regulations and to "justify their malicious retaliation as a result of sexual harassment." (Compl. ¶ 4). Plaintiff immediately questioned Jenkins on the motivation of her firing. (Compl. ¶ E(iii)). When Plaintiff asked if her firing resulted from her sexual harassment complaint, Jenkins purportedly stated that, "it had nothing to do with the sexual harassment complaint and that the guy didn't mean to walk in front of her half naked." (Id.). During this exchange, Jenkins did not provide Plaintiff with copies of the federal logs containing the supposed violations. (Compl. ¶ E(iv)). Following her termination, Plaintiff alleges that Defendants continued to retaliate against her by delaying verification of her employment with AMHGI "for almost a month," when Plaintiff applied for a driving position with another company. (Compl. ¶ L).

In response to her termination, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, Charge No. 435-2022-00600, alleging sexual harassment and retaliation. (Compl. ¶ G). The EEOC dismissed her Charge with a no-cause finding and issued a Right to Sue letter on February 24, 2023. (Id.; Doc. No. 8 at 2). Subsequently, Plaintiff filed the

3

instant case in the Superior Court of Mecklenburg County, North Carolina on April 25, 2023. (Doc. No. 8 at 2). AMHGI removed the case to this Court on May 31, 2023. (Id.).

Now, Defendants, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, move the Court to dismiss Plaintiff's claims, including a sexual harassment claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, a retaliatory discharge claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*, any state law claims, such as claims under the North Carolina Retaliatory Employment Discrimination Act, N.C. Gen. Stat. § 95-240, *et seq.*, and any individual claims against owners Adam and Amanda McCoy. (Doc. No. 7 at 1; Doc. No. 11).

## II. DISCUSSION

### A. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Mere 'labels and conclusions' will not do." Holloway v. Maryland, 32 F.4th 293, 298 (4th Cir. 2022) (quoting Twombly, 550 U.S. at 555).

4

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. 556 U.S. at 678-79. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). Although the pleading requirements stated in Rule 8 of the Federal Rules of Civil Procedure mark "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era. . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court assumes their truth and then determines whether they plausibly give rise to an entitlement to relief. Id. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

In the Fourth Circuit, "[i]t has long been the rule that 'an employment discrimination plaintiff need not plead a prima facie case of discrimination' under the evidentiary framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), to withstand a motion to dismiss." Holloway, 32 F.4th at 298. "Instead, a plaintiff must allege sufficient facts 'to satisfy the elements of a cause of action created by [the applicable] statute.'"

Felder v. MGM Nat'l Harbor, LLC, No. 20-2373, 2022 WL 2871905, at *1 (4th Cir. July 21, 2022) (quoting McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 584-85 (4th Cir. 2015)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Neitzke v. Williams, 490 U.S. 319, 326 (1989). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations . . . a claim must be dismissed." Neitzke, 490 U.S. at 327 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

Because Plaintiff proceeds pro se, the Court affords her pleading a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). Nonetheless, a district court cannot ignore a clear failure in the pleading to allege facts which set forth a cognizable claim. See Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990).

**B.       Plaintiff fails to sufficiently allege a claim for sexual harassment under Title VII.**

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court of the United States has held that "a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." Meritor Sav. Bank v. Vinson, 477 U.S. 57, 66 (1986). The Supreme Court clarified that Title VII prohibits "a hostile environment based on discriminatory sexual harassment." Id.

"A hostile environment that violates Title VII 'exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"

6

Holloway, 34 F.4th at 300 (quoting Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (en banc) (internal quotation marks and brackets omitted)). Thus, under Title VII,

> [t]o demonstrate sexual harassment . . . a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's sex; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create the abusive work environment; and (4) which is imputable to the employer.

Okoli v. City of Baltimore, 648 F.3d 216, 220 (4th Cir. 2011) (internal citations and alterations omitted) (quoting Mosby-Grant v. City of Hagerstown, 630 F.3d 326, 334 (4th Cir. 2010)).

The Fourth Circuit has held that the first element, which requires a showing of "unwelcome conduct," "is not a high hurdle" for plaintiffs to surpass. Strothers v. City of Laurel, 895 F.3d 317, 328 (4th Cir. 2018). The Fourth Circuit has "repeatedly held [that] an employee can demonstrate that certain conduct is unwelcome simply by voicing her objection to the alleged harasser or to the employer." Id. at 328-29. The "nature of the conduct may indicate whether or not the conduct is unwelcome." Id. at 329. Plaintiff sufficiently pleads that the alleged harassment was unwelcome based on the facts set forth in her Complaint. (Compl. ¶ B (ii, iii)). Plaintiff also demonstrates the conduct was unwelcome through her complaining of the conduct to management. (Compl. ¶ B (iv)). Further, Defendant does not contest that the undressed employee's conduct was unwelcome. (Doc. No. 8).

The Supreme Court has made clear that "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." Harris v. Forklift Sys. Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Sav. Bank, 477 U.S. at 65). The Fourth Circuit has recognized that "plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008). See Bass v. E. I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (affirming the 12(b)(6) dismissal of plaintiff's

hostile work environment claim for failure to plead facts sufficient to show "severe or pervasive gender, race, or age[-]based activity").

In evaluating Title VII hostile work environment claims, courts most consider the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 787–88, (1998) (quoting Harris, 510 U.S. at 23). The harassment "must be [so] extreme [as] to amount to a change in the terms and conditions of employment." Sunbelt Rentals, Inc., 521 F.3d at 315. "Rude treatment, callous behavior, or routine difference of opinion and personality conflict, without more, will not suffice." Holloway, 32 F.4th at 301 (quoting Sunbelt Rentals Inc., 521 F.3d at 315-16) (internal quotation marks and brackets omitted). Generally speaking, "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). See Parks v. Louisiana-Pacific Corp., 400 F. Supp. 3d 393, 410, 408 (W.D.N.C. 2019) (Bell, J.) (holding that a plaintiff failed to establish "severe or pervasive" racial harassment when evidence showed only "isolated, sporadic instances").

In this case, Plaintiff suffered an unfortunate, yet isolated,[1] event one night at a truckyard in Texas. Apart from that night, Plaintiff's Complaint lacks any additional allegations as to sexual

---

[1] Though Plaintiff alluded to other incidents of sexual harassment in her Response in Opposition to Defendants' Rule 12(b)(6) Motion to Dismiss, including a brother-in-law of an AMHGI owner engaging in inappropriate discussions about Plaintiff's body, Plaintiff's Complaint does not include these additional allegations and therefore cannot be considered in the disposition of a Fed. R. Civ. Proc. 12(b)(6) motion to dismiss (Doc. No. 9-1 at 9). See Iqbal, 556 U.S. at 678 (internal citations omitted) ("To survive a motion to dismiss, a complaint must state sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."); McNulty v. Commc'ns Workers of Am., No. 3:12CV-22-MOC-DSC, 2012 WL 1569601, at *3 (W.D.N.C.

8

Case 3:23-cv-00322-KDB-SCR   Document 29   Filed 10/16/23   Page 8 of 17

harassment. At most, Plaintiff's allegations support that her coworker's behavior was rude and callous, but that is not enough. Plaintiff's Complaint does not sufficiently allege that the coworker in his underwear was threatening or aiming to humiliate or ridicule her. Plaintiff also does not sufficiently allege that the incident interfered with her work performance.

For these reasons, Plaintiff fails to state a sexual harassment claim under Title VII. Thus, the undersigned respectfully recommends that Defendants' Motion to Dismiss be granted as to Plaintiff's Title VII sexual harassment claim.

**C.      Plaintiff sufficiently alleges a claim for retaliation under Title VII.**

Title VII prohibits employers from retaliating against an employee because of that employee's participation in a protected activity, including opposition to, or complaints about, an unlawful employment practice. 42 U.S.C. § 2000e-3(a). A plaintiff with a Title VII retaliation claim must allege facts showing: "(1) that [s]he engaged in protected activity; (2) that the employer took a materially adverse action against [her]; and (3) there is a causal connection between the protected activity and the adverse action." Perkins v. Int'l Paper Co., 936 F.3d 196, 213 (4th Cir. 2019).

To sufficiently allege the first element of a Title VII retaliation claim, an employee must allege that he or she "opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3(a). Such "[p]rotected activity under Title VII includes complaints of discrimination based upon 'race, color, religion, sex or national origin.'" Landino v. Sapp, 520 F. App'x 195, 198 (4th Cir. 2013) (quoting Balazs v. Liebenthal, 32 F.3d 151, 159 (4th Cir. 1994)). The Fourth Circuit has "articulated an expansive view of what constitutes oppositional conduct,

---

Mar. 16, 2012) ("Additional factual allegations contained in a response brief are not considered on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6)").

recognizing that it 'encompasses utilizing informal grievance procedures as well as . . . voicing one's opinions in order to bring attention to an employer's discriminatory activities.'" DeMasters v. Carilion Clinic, 796 F.3d 409, 417 (4th Cir. 2015) (quoting Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998)). See Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 122 (4th Cir. 2021) ("Complaints raised through internal company procedures are recognized as protected activity."). Whether an employee engaged in a protected activity "depend[s] on the totality of the circumstances, as [a] play cannot be understood on the basis of some its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenarios." DeMasters, at 418 (quoting Moore v. City of Philadelphia, 461 F.3d 331, 346 (3d Cir. 2006)). Therefore, the definition of protected activity under Title VII is "broad" and "the threshold for oppositional conduct is not onerous." DeMasters, 796 F.3d at 417 (citing Crawford v. Metro. Gov't of Nashville & Davidson Cnty., 555 U.S. 271, 276 (2009)).

The Fourth Circuit has made clear that Title VII's "anti-retaliation provision protects employees even when they complain of actions that are not actually unlawful under Title VII." Strothers v. City of Laurel, 895 F.3d 317, 327 (4th Cir. 2018). "Instead, complaining employees are protected if, at the time of their complaint, they 'have an objectively reasonable belief in light of all the circumstances that a Title VII violation has happened or is in progress.'" Id. at 327 (quoting Boyer-Liberto, 786 F.3d at 282). See Henderson v. Univ. of N.C. at Chapel Hill, No. 1:16-cv-1410, 2018 WL 3966696, at *5 (M.D.N.C. June 27, 2018), adopted by, 2018 WL 3966314 (M.D.N.C. Aug. 17, 2018) (holding that a reasonable factfinder could conclude that an employee reasonably believed that her supervisor engaged in sexually harassing behavior, "even though that behavior did not actually rise to the level of an actionable hostile work environment," when a

10

supervisor stated to the employee "When I love, I love hard," that the employee "was 50 percent here and 50 percent in Maryland and that maybe when her husband moves here, [the supervisor would] get his other 45 percent," commented that the employee's travels caused "wear and tear on her body," and inquired into her living arrangements).

Here, Plaintiff's colleague initially informed AMHGI of Plaintiff's encounter with the coworker in his underwear, and Plaintiff alleges she engaged in protected activity when she "followed-up regarding the incident that took place at the warehouse" with "safety manager Johnathan Jenkins." (Compl. ¶ B(iv)). Because the Fourth Circuit defined opposition activities "broad[ly]" and the threshold to meet this standard is "not onerous," the Court finds that, for the purposes of evaluating this Motion to Dismiss, Plaintiff sufficiently alleges that she engaged in protected activity when she internally complained to a manager about her coworker appearing before her in his underwear even though another employee made the initial report.

The Court finds that, at the time of her complaint, Plaintiff held an objectively reasonable belief that sexual harassment had occurred. Plaintiff alleges that her male coworker moved from the back of the warehouse to the front of the warehouse, and that the coworker was walking in his underwear near her assigned trailer. (Compl. ¶ B(ii)). She further alleges that this incident occurred at night in an unpopulated truckyard in which she would usually sleep. (Compl. ¶ B(iii)). While on FaceTime with another colleague, Plaintiff details her "shock[] at what she was seeing." (Compl. ¶ B(ii)). Plaintiff alleges that "[i]t was no accident that the guy [was] walking around in his underwear on a warehouse lot at night with only he and Plaintiff here." (Id.). Subsequently, Plaintiff "left to find a comfortable place to rest for the night," even though "she would normally do her 10hr reset at the warehouse[, because] she felt unsafe and uncomfortable." (Compl. ¶ B(iii)). In light of these circumstances and viewing the Complaint in the light most favorable to

11

Plaintiff, these facts support the finding that Plaintiff had an objectively reasonable, though ultimately incorrect, belief at the time that the incident gave rise to a sexual harassment claim.

As to the second element of a Title VII retaliation claim, "[a]n adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (internal citations omitted). An "adverse action must result in some significant detrimental effect." Laird v. Fairfax Cnty., 978 F.3d 887, 892 (4th Cir. 2020) (internal citations omitted). "Discharge from employment is one form of adverse employment action." Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 123 (4th Cir. 2021). "A downgraded performance evaluation on its own is not an adverse personnel action; but a downgraded performance evaluation could be an adverse personnel action in instances where the downgraded performance evaluation effects [sic] the terms, conditions, and benefits of employment." Barnhill v. Garland, 636 F. Supp. 3d 592, 605 (E.D. Va. 2022).

Here, Plaintiff alleges that only a couple of weeks after Plaintiff's complaint, AMHGI made "sudden change[s]" to long-established logging policies and falsified Plaintiff's federal logs. (Compl. ¶ C). AMHGI then cited Plaintiff's failure to comply with the allegedly "unclear" and "new" logging policies when explaining her termination. (Compl. ¶ C(iii)). There is no dispute that AMHGI fired Plaintiff approximately one month after she first complained about the alleged incident, which is sufficient to establish that AMHGI took a materially adverse action against Plaintiff. As a result, with allegations of changed policies, falsified records, and termination of employment, Plaintiff sufficiently alleges the second element of a Title VII retaliation claim.

As to the third and final element of a Title VII retaliation claim, a "plaintiff may attempt to demonstrate that a protected activity caused an adverse action [by either] establish[ing] the existence of facts that suggest that the adverse action occurred because of the protected activity

[or] establish[ing] that the adverse act bears sufficient temporal proximity to the protected activity." Roberts, 998 F.3d at 123 (internal citations omitted). See also Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (accepting "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case" of a Title VII retaliation claim when the temporal proximity is "very close"); Pascual v. Lowe's Home Ctr., Inc., 193 Fed. Appx. 229, 233 (holding that a period of "at least three to four months separat[ing]" the protected activity and the materially adverse action was "too long to establish a causal connection by temporal proximity alone"). "[V]ery little evidence of a causal connection is required to establish . . . retaliation." Burgess v. Bowen, 466 F. App'x 272, 283 (4th Cir. 2012).

Plaintiff alleges that she internally followed-up with management regarding her concern about the encounter with her male coworker in his underwear the week of February 21, 2022. (Compl. ¶ B(iv)). Plaintiff alleges that approximately two weeks later, on March 9, 2022, AMHGI began changing its logging policies. (Compl. ¶ C). AMHGI terminated Plaintiff's employment on March 18, 2022. Id. Less than a month passed between Plaintiff's protected activity and Plaintiff's termination. Plaintiff alleges that the reasoning given by Defendants for Plaintiff's termination, which includes Plaintiff's loss of two $80 diesel caps, noncompliance with AMHGI's "new" logging policy, and violations of federal logging regulations, is pretextual[2] (as plaintiff

---

[2] "Whether [Defendants'] nondiscriminatory explanation for [their adverse action] is in fact pretext is a question to be analyzed under the long-familiar shifting burdens regime of McDonnell Douglas, and not under Rule 12(b)(6). Still, under Iqbal and Twombly, the Court must consider the plausibility of inferring discrimination based on [Plaintiff's] allegations in light of an 'obvious alternative explanation' for the conduct. . . . The question is not whether there are more likely explanations for [Defendant's] action, however, but whether [Defendant's] impliedly proffered reason . . . is so obviously an irrefutably sound and unambiguously nondiscriminatory and non-pretextual explanation that it renders [Plaintiff's] claim of pretext implausible." Woods v. City of Greensboro, 855 F.3d 639, 649 (4th Cir. 2017) (quoting Iqbal, 556 U.S. at 682).

13

alleges that Defendants falsified her logging records).  This temporal proximity, coupled with Plaintiff's allegations of Defendants' retaliatory change of policies and falsification of logging records, sufficiently establishes the third element of a retaliation claim under Title VII.

Considering all of this, Plaintiff alleges a plausible retaliation claim under Title VII.  For this reason, the undersigned respectfully recommends that Defendants' Motion to Dismiss be denied as to Plaintiff's retaliation claim.

**D.    Plaintiff fails to sufficiently allege any claims under North Carolina state law**

Plaintiff fails to mention any state law claims in her Complaint.  However, Plaintiff referenced the North Carolina Retaliatory Employment Discrimination Act (REDA), N.C. Gen. Stat. § 95-240, *et seq*., in her Response in Opposition to Defendants' Motion to Dismiss (Doc. No. 9-1 at 15).  The Court cannot consider new claims contained in a response brief that are not included in the Complaint.  See Iqbal, 556 U.S. at 678 (internal citations omitted) ("To survive a motion to dismiss, *a complaint* must state sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (emphasis added); McNulty, No. 3:12CV-22-MOC-DSC, 2012 WL 1569601, at *3 ("Additional factual allegations contained in a response brief are not considered on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6)").  As a result, Plaintiff fails to properly allege a state law claim.

Even when liberally construing Plaintiff's pro se complaint, Plaintiff fails to allege any plausible state law claims.  REDA prohibits "retaliatory action against an employee" when an employee "files a complaint or initiates an inquiry under certain North Carolina statutes."  N.C. Gen. Stat. § 95-241(1); Delon v. McLaurin Parking Co., 367 F. Supp. 2d 893, 902 (M.D.N.C. 2005) (granting a motion for summary judgment against an employee's racial discrimination claim under REDA, because the employee's action "was not one of the enumerated list that is protected

14

under REDA"); Johnson v. North Carolina, 905 F. Supp. 2d 712 (W.D.N.C. 2012). Plaintiff did not allege the conduct complained of here is a right protected by REDA or that she followed the procedures required to bring such a claim.

Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss be granted as to any state law claims.

E. **Defendants Adam McCoy and Amanda McCoy cannot be held individually liable.**

Title VII prohibits unlawful employment practices by an "employer," which is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees," as well as "any agent of such a person." 42 U.S.C. §§ 2000e-2(a); 2000e-2(b). The Fourth Circuit has previously rejected the claim of individual liability under Title VII. See Lissau v. S. Food Servs., Inc., 159 F.3d 177, 180 (4th Cir. 1998) (concluding that "supervisors are not liable in their individual capacities for Title VII violations"); see also Springs v. Mayer Brown, LLP, Nos. 3:09cv352, 3:10cv385, 2011 WL 251206, at *2 (W.D.N.C. Jan. 26, 2011) ("It is well-established that there is no individual liability under Title VII."). Plaintiff has not pled sufficient factual allegations supporting a claim that the Court should disregard the corporate form of Defendant AMHGI and hold its owners individually liable under Title VII or North Carolina law.[3] See Burnette v. Austin Med., Inc., No. 1:11cv52, 2011 WL 1769445, at *4-5 (W.D.N.C. Apr. 14, 2011) adopted by 2011 WL 1754166 (W.D.N.C. May 9, 2011) (dismissing an employee's Title VII and wrongful discharge claims against the individual owner of her employer, because without "demonstrat[ion of] some abuse of the corporate form," "[s]ubstantial ownership of a corporation

---

[3] It is not entirely clear that Plaintiff intended to sue Adam and Amanda McCoy in their individual capacity. Though Plaintiff listed them as Defendants on the Petition to Proceed as an Indigent, Civil Summons, and Servicemembers Civil Relief Act Declarations (Doc. No. 1-1 at 1, 3, & 5), in certain places in the Complaint, she refers to Defendant in the singular, rather than plural, tense. See, e.g., (Compl. ¶ 2, F, G, H, I, & L).

15

by one individual is not sufficient to pierce the corporate veil"); see also Richmond v. Indalex Inc., 308 F. Supp. 2d 648, 658 (M.D.N.C. 2004) (dismissing a complaint under Rule 12(b)(6) where "no allegations that [defendant] . . . abused its corporate privilege or that the court should disregard [the] corporate form to prevent an injustice to plaintiff" exist). Most importantly, Plaintiff alleges no individual conduct by Adam or Amanda McCoy that would give rise to any cause of action against either of them. This failure to assert any basis for imputing liability is fatal; therefore, the undersigned respectfully recommends that Defendants' Motion to Dismiss be granted as to Defendants Adam McCoy and Amanda McCoy.

### III. ORDER

**IT IS ORDERED** that all pretrial proceedings, including all discovery, are **STAYED** pending the District Court's review of the Recommendation below.

### IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the Motion to Dismiss submitted by Defendants AMHGI, Adam McCoy, and Amanda McCoy, (Doc. No. 7) be **GRANTED IN PART AND DENIED IN PART**.

### V. TIME FOR OBJECTIONS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to

preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to the parties' counsel and to the Honorable Kenneth D. Bell.

**SO RECOMMENDED.**

Signed: October 13, 2023

Susan C. Rodriguez
United States Magistrate Judge