# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:23-CV-00322-KDB-SCR

| | |
|---|---|
| TYRICKA LASHANDA SIMPSON,<br><br>**Plaintiff**,<br><br>v.<br><br>ADAM MCCOY'S HAULING AND GRADING, INC.,<br><br>**Defendant**. | **ORDER** |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 72). The Court has carefully considered this motion and the parties' briefs and exhibits. For the reasons discussed below, the Court will **DENY** the motion.

## I.      LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *United States v. 8.929 Acres of Land in Arlington Cnty., Virginia*, 36 F.4th 240, 252 (4th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)); *see United States, f/u/b Modern Mosaic, LTD v. Turner Construction Co., et al.*, 946 F.3d 201, 206 (4th Cir. 2019). A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *8.929 Acres of Land,* 36 F.4th at 252. "A fact is material if it might affect the outcome of the suit under the governing law." *Id.* (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)). In determining if summary

1

judgment is appropriate, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weigh[ing] the evidence or mak[ing] credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (internal quotation marks omitted) (quoting *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions, or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (when the nonmoving party "has failed to make a sufficient showing on an essential element of [his] claim with respect to which [he] has the burden of proof," summary judgment is warranted); *United States ex rel. Gugenheim v. Meridian Senior Living, LLC*, 36 F.4th 173, 178 (4th Cir. 2022). If the movant satisfies his initial burden to demonstrate "an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmovant to "present specific facts showing that there is a genuine issue for trial." *8.929 Acres of Land,* 36 F.4th at 252 (quoting *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015)). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021). Rather, the nonmoving party must establish that a material fact is genuinely disputed by, *inter alia*, "citing to particular parts of the materials of record" and cannot rely only on "conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." Fed. R. Civ. P. 56(c)(1)(A); *8.929 Acres of Land,* 36 F.4th at 252 (quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013)). In the end, the relevant inquiry

2

on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## II. FACTS AND PROCEDURAL HISTORY

According to her verified Complaint, Plaintiff was hired by Adam McCoy Hauling and Grading, Inc. ("AMHGI") in August 2021 as an over-the-road truck driver. Doc. No. 1-1 ("Compl.") ¶ A. In November 2021, Plaintiff resigned to take a higher paying position at another company. *Id.* When she wished to return to AMHGI that December, she was rehired. *Id.* One evening, in February 2022, she arrived at a warehouse in Houston, Texas. *Id.* at ¶ B. While driving to the front of the warehouse to find her assigned trailer, she saw a co-worker walking in front of his tractor wearing only his underwear and penny loafers. *Id.* at ¶ B(ii). Plaintiff used Facetime to call another co-worker and showed him the "very odd and uncomfortable sight." *Id.* In the second co-worker's affidavit, he reported that Plaintiff was not "bothered or stressed" about the event and that she was "laughing while telling me about it." Doc. No. 73-11 ¶¶ 15-17. The second co-worker further noted that Plaintiff stated that she was not going to report the incident and that he (the co-worker) shouldn't either. *Id.* at ¶ 17. At some point after Plaintiff called the second co-worker, the mostly undressed co-worker, still shirtless, apologized to Plaintiff for walking in front of her in his underwear. Compl. at ¶ B(iii). Plaintiff finished her work and then left to find a place to rest because she felt unsafe and uncomfortable staying at the warehouse, which she otherwise would have done. *Id.* The second co-worker later called AMHGI's owner, Adam McCoy, to report what he had seen. *Id.* at ¶ B(ii). The co-worker in his underwear was reprimanded and written up for his behavior. Doc. 76-2 at 206.

3

Upon returning from a vacation during the week of February 21, 2022, Plaintiff "followed up" on the incident and was told by the safety manager, Jonathan Jenkins, that her co-worker had not meant to walk around half-naked in front of her. Compl. at ¶ B(iv). Plaintiff alleges that she never received any documentation of her complaint or evidence of disciplinary action regarding the event. *Id.*

Approximately two weeks after she returned to work and followed up on the encounter, Plaintiff alleges that "the rules began to change." *Id.* at ¶ C. On March 9, 2022, Plaintiff received a warning via text message from Mr. Jenkins that she could not place her driving log in a "yard move"[1] status while in traffic because "the D[epartment] O[f] T[ransportation] would shut her down" and AMHGI might receive citations. *Id.* at ¶¶ C, C(i). On March 16, 2022, Mr. Jenkins called Plaintiff and told her that she "could no longer use 'personal conveyance'[2] while under a load." *Id.* at ¶ D. Plaintiff alleges she was confused because she was not advancing a load at the time, but instead was waiting on a load, with the truck parked and no one in the driver's seat. *Id.*; Doc. No. 9-1 at 2.

Two days later, on March 18, 2022, Plaintiff was met on the warehouse lot where she parks her truck in Charlotte, North Carolina, by Mr. Jenkins and "Tommy," Mr. McCoy's brother-in-law. *Id.* at ¶ E. Mr. Jenkins informed Plaintiff that she was being terminated for falsifying her driver logs by using yard move and personal conveyance at inappropriate times,

---

[1] In Plaintiff's view, "yard move" is a status to be used "while in traffic and/or on a warehouse yard." Doc. No. 9-1 at 2.

[2] Plaintiff defines "personal conveyance" as a status that "stops the clock and begins a 10hr reset for the commercial vehicle. This status can put the truck in personal use." Doc. No. 9-1 at 2.

for losing a second fuel cap, and for requiring the assistance of other employees to hook up trailers at the Charlotte warehouse. Doc. No. 73-8.

Plaintiff asked Mr. Jenkins whether her termination was related to her sexual harassment complaint. *Id.* at ¶ E(iii). He told her that her termination had no relation to the complaint but then reiterated that her co-worker did not mean to walk in front of her half-naked. *Id.* Plaintiff asked for the federal logs that would show her supposed violations, but Mr. Jenkins said he "didn't have [them] and would see what he could come up with." *Id.* at ¶ E(iv). Plaintiff then filed claims of sexual harassment and retaliation with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at ¶¶ F, G. The EEOC dismissed her Charge with a no-cause finding and issued a Right to Sue letter in February 2023. *Id.* at ¶ G.

Plaintiff initially filed this case in the Superior Court of Mecklenburg County, North Carolina in April 2023, *see* Compl. at 1, and it was timely removed by Defendant to this Court in May 2023. Doc. No. 1. She alleges that the Defendants engaged in (1) sexual harassment in violation of Title VII of the Civil Rights Act of 1984 ("Title VII") (42 U.S.C. § 2000e, *et seq.*), (2) retaliatory discharge in violation of Title VII, and (3) retaliatory employment discrimination in violation of North Carolina law (N.C. Gen. Stat § 95-240, *et. seq.*). Compl. at 1; ¶ K. AMHGI moved to dismiss Plaintiff's claims, and the Court partially granted the motion, dismissing claims (1) and (3). Doc. No. 7. Thus, the only remaining claim, which is the subject of this Motion for Summary Judgment, is retaliatory discharge in violation of Title VII. Doc. No. 72.

### III. DISCUSSION

As discussed above, the only remaining claim in dispute is whether AMHGI retaliated against Plaintiff when it terminated her employment on March 18, 2022, after she reported an

incident of alleged sexual harassment in February 2022. Compl. at ⁋ B(ii). Under Title VII, an employer may not retaliate against an employee for engaging in a protected activity. 42 U.S.C. § 2000(e)-3(a). Complaints, including those for sexual harassment, made through internal company procedures are recognized as a protected activity. *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021). Plaintiff therefore engaged in a protected activity when she called safety manager Mr. Jenkins to report a co-worker for walking in front of her in only his underwear and shoes. That the Court has determined the activity alleged by Plaintiff does not rise to the level of unlawful sexual harassment is immaterial for the purposes of deciding if Plaintiff can proceed on her distinct retaliation claim.[3] *See Strothers v. City of Laurel*, 895 F.3d 317, 327 (4th Cir. 2018) (noting that Title VII's anti-retaliation provision protects an employee even when their complained of action is not actually unlawful, so long as at the time of their complaint, they have an "objectively reasonable belief in light of the circumstances that a Title VII violation has occurred.") (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015)).

At the summary judgment stage, a plaintiff alleging retaliation under Title VII can establish a material factual dispute sufficient for trial through direct evidence of retaliatory animus, or through circumstantial evidence using the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973). *See also Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1228 (4th Cir. 1998) ("The series of proofs and burdens outlined in *McDonnell Douglas* apply to retaliation claims."). Direct evidence "must demonstrate

---

[3] *See* Doc. Nos. 29, 32, for the Court's explanation of why the conduct alleged did not rise to the level of sexual harassment.

that an adverse employment action was actually due to [a protected activity] as opposed to some other lawful reason." *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 205 (4th Cir. 2016).

No direct evidence of retaliation has been proffered; therefore, the Plaintiff must proceed through the *McDonnell Douglas* framework, which comprises three steps: "(1) the plaintiff must establish a *prima facie* case of . . . retaliation; (2) if the plaintiff presents *a prima facie* case, then the burden shifts to the defendant to show a legitimate . . . non-retaliatory reason for the adverse employment action; and (3) if the defendant shows such a reason, then the burden shifts to the plaintiff to prove that the reason is pretextual." *Sanders v. Tikras Tech. Sols. Corp.*, 725 F. App'x 228, 229 (4th Cir. 2018) (citing *McDonnell Douglas*, 411 U.S. at 802–04). At step three, pretext can be proven "by showing that the explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative" of retaliation. *Propst v. HWS Co., Inc.*, 148 F. Supp. 3d 506, 527 (W.D.N.C. 2015) (quoting *Dugan v. Albemarle Cnty. Sch. Bd.*, 293 F.3d 716, 721 (4th Cir. 2002)). If an employer offers inconsistent explanations or justifications concerning its actions, then those inconsistencies are probative of pretext. *Id. See also EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852–53 (4th Cir. 2001). However, "mere conjecture and speculation" are inadequate to overcome a summary judgment motion. *Id.*

Plaintiff has alleged a *prima facie* case of retaliation, as set out in the Magistrate Judge's Memorandum and Recommendation,[4] which was adopted by the Court. Plaintiff made a sexual harassment complaint after witnessing a colleague walking in front of her in just his underwear

---

[4] The Memorandum and Recommendation addressed Defendant's motion to dismiss, which was denied as to the retaliation claim based on Plaintiff's verified and notarized allegations of sexual harassment and retaliation. *See* Doc. No. 29; Compl. at 7-18.

7

and shoes. Compl. ¶ C. The incident occurred in an unpopulated truck yard where Plaintiff would normally sleep in her truck. Compl. ¶ B(iii). Plaintiff followed up with the safety manager about the event about ten days after the incident. Compl. ¶ B(iv). Within two weeks of the follow up, Plaintiff was written up for what she considered to be a routine and accepted practice (use of yard move while in traffic). Compl. ¶ C. Then, despite changing her behavior—to conform with the safety manager's instructions—as related to yard move, she was reprimanded again a week later for her use of a different driving designation, personal conveyance, and was subsequently terminated two days after that for "numerous violations." Compl. ¶ D.

Because Plaintiff has alleged a *prima facie* case of retaliation under *McDonnell Douglas,* the burden shifts to the Defendant to provide a legitimate, nonretaliatory reason for Plaintiff's termination. Defendant suggests that Plaintiff's termination was related not to her sexual harassment claim, but instead for her failures to follow company policy and federal regulations (specifically, misuse of the driving designations yard move and personal conveyance) in documenting her in-truck time. Defendant provides the following as evidence:

- On February 23, 2022, Plaintiff drove the truck 37 miles in yard move. Doc. No. 73 at 10.
- On February 24, 2022, Plaintiff drove the truck 70 miles on the highway in yard move and used personal conveyance to drive 128 miles. *Id.* at 10-11.
- On March 2, 2022, Plaintiff drove her truck 24 miles in yard move. *Id.* at 11.
- On March 3, 2022, Plaintiff drove her truck in personal conveyance for 131 miles. *Id.*
- On March 4, 2022, Plaintiff drove her truck 9 miles in yard move. *Id.*
- On March 7, 2022, Plaintiff drove her truck 42 miles in yard move and used personal conveyance to drive 25 miles. *Id.*
- On March 9, 2022, Plaintiff drove her truck in traffic, with a load, in yard move. Safety Manager Mr. Jenkins sent a text message to Plaintiff on March 9, 2022, instructing her that she was improperly using yard move while in traffic, and that such use could result in disciplinary action from the Department of Transportation ("DOT"). *Id. See also* Doc. 73-7 at 1-2.

8

Defendant also produced a copy of the employee write up dated March 16, 2022, that coincided with Plaintiff's termination, and lists the following as the reasons for termination:

- 3/16/22 Falsified driver logs by showing Personal Conveyance and drove for 123 [later corrected to 37] miles during shift time on PC. This has also been verbally addressed in the past with driver not using Yard Move and Personal Conveyance in accordance with FMCSA regulations.
- 3/12/2022 driver lost fuel cap for the 2nd time which could lead to fuel splashing from tank and causing an environmental hazard.
- 3/7/2022 driver used Yard Move for 54m17s and drove for 42 miles on the highway.
- 3/2/2022 driver used Yard Move for 39 minutes and drove for 24 miles on the highway.
- 2/24/22 driver used PC to further route and drove 136 miles.
- 2/24/2022 drover [sic] used Yard Move and drove 70 miles on the highway.
- Driver also had to have assistance from other employees to hook up trailers at the [C]harlotte warehouse on multiple occasions. Driver must be able to hook and unhook trailers to fulfill their work obligations.
- Plan for Improvement: Due to multiple log violations employment is terminated on 3/18/2022.

Doc. No. 73-8 at 1-2.

The Court finds that Defendant has asserted legitimate, nonretaliatory reasons for Plaintiff's termination. Thus, under *McDonnell Douglas*, the burden shifts back to Plaintiff to provide evidence that Defendant's reason for termination is pretextual. One such way to demonstrate pretext at the summary judgment stage is through temporal proximity. "Generally, temporal proximity standing alone is insufficient to establish a jury question regarding pretext." *James v. City of Florence*, D.S.C. No. 4:18-CV-1857-DCC-TER, 2019 WL 9341415, at *5 (D.S.C. Sept. 5, 2019), *report and recommendation adopted,* D.S.C. No. 4:18-CV-01857-SAL, 2020 WL 1983220 (D.S.C. Apr. 27, 2020), *aff'd,* 4th Cir. No. 20-1562, 2021 WL 5564676 (4th Cir. Nov. 29, 2021) (citing *Wagner v. Wheeler*, 13 F.3d 86, 91 (4th Cir. 1983)). "However, temporal proximity may still be considered when determining whether a plaintiff has established

a jury question regarding pretext." *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). *See, e.g., Carter v. Ball, 3*3 F.3d 450, 460 (4th Cir. 1994) (finding temporal proximity where an employee was demoted six weeks after a hearing on his EEO complaint). As evidence of pretext, Plaintiff first asserts that she was terminated less than one month after making the sexual harassment report. Notably, there is not one infraction on the termination document dated prior to Plaintiff reporting her co-worker in his underwear. In fact, the first time AMHGI provides evidence that the safety manager spoke with Plaintiff about her conduct was on March 9, 2022, about two weeks after her report, when he told her that she could no longer use yard move when in traffic. Doc. 76-2 at 27-28. On March 16, 2022, the safety manager again spoke with Plaintiff, telling her for the first time about using personal conveyance incorrectly. *Id.* at 76.

Second, Plaintiff notes that she fully complied with both corrective action notices, and based on Defendant's termination notice, there were no documented incidences of improper yard move after March 9, 2022, or personal conveyance after March 16, 2022. *See* Doc. No. 76-2 at 128. This suggests that Plaintiff modified her behavior as requested by AMHGI. Third, the employer admits to knowing how Plaintiff used personal conveyance and yard move throughout her entire employment. *See* Doc. No. 73 at 6-7 ("In his regular and periodic reviews of Plaintiff's logs . . . [he would] make proposed revisions . . . [t]hroughout the full course of Plaintiff's employment"). However, Defendant has provided no evidence that Plaintiff was ever reprimanded or understood her actions to be in violation of company practices until she was counseled—and rapidly terminated—after reporting sexual harassment. Indeed, Defendant's safety manager acknowledges that he revised Plaintiff's timesheets—without any accompanying corrective actions or discussion with Plaintiff—until March 9, 2022. This suggests that her

10

Case 3:23-cv-00322-KDB-SCR    Document 79    Filed 12/03/24    Page 10 of 11

driving practices were tolerated, if not ratified, by Defendant, and lends credence to her repeated assertions that her usage of yard move and personal conveyance were accepted company practice, even if they were not aligned with company policy or within federal regulations. Doc. No. 76-2 at 64-68.

In sum, taking these facts in the light most favorable to the Plaintiff, a reasonable jury could interpret Plaintiff's termination as pretextual. As such, there exists a genuine dispute as to material facts and summary judgment will be denied accordingly.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Motion for Summary Judgment (Doc. No. 72) is **DENIED;**

2. This case shall **proceed to trial on the merits** in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: December 3, 2024

Kenneth D. Bell
United States District Judge